IN UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:08mj565 |
| v. | ) | |
| | ) | |
| MICHAEL MILAN | ) | |
| | ) | |
| Defendant. | ) | |

MOTION FOR REVOCATION OF ORDER SETTING CONDITIONS OF RELEASE

**I.   Introduction**

The United States of America, by and through its attorneys, Dana J. Boente, Acting

United States Attorney, and Edmund P. Power, Assistant United States Attorney, moves this

Honorable Court to revoke the defendant's bond, pursuant to 18 U.S.C. § 3145(a)(1).  The

defendant fled to Iran in July 2008 after learning he was the target of this investigation and after

surrendering his passports to the government.  While in Iran, he committed additional financial

crimes.  He has multiple felony convictions, including obtaining credit in the names of others,

and his criminal record includes numerous charges of being a fugitive from justice and

committing an offense while on probation.  He is a risk of both flight and danger and there are no

conditions of release that can ensure his presence or the safety of the community.  The order

permitting his release on conditions should be revoked and he should be detained pending trial.

**II.   Statement of Facts**

The defendant, a loan officer at Preferred Choice Mortgage in Potomac, Maryland,

engaged in a fraudulent scheme to sell his home to Navid Mahdavi for $4.6 million.   In

furtherance of the scheme, the defendant and others acting on his instructions prepared and

submitted false mortgage applications for Mahdavi to obtain the funds for the purchase.  The

false statements on the applications included that Mahdavi earned $79,100 per month as opposed

to his true income of approximately $10,000 per month and that his bank account held $2.8

million rather than its true balance of $300.  The defendant and Mahdavi were attempting to

obtain one "first trust" loan of $2 - $3 million and as many "second trust" loans as they could get

away with in the hope of ultimately obtaining $5.5 million in loans on a property worth

significantly less than that.  They planned to close the loans simultaneously in order to prevent

each lender from learning of the other loans.

Prior to completion of the scheme, Mahdavi confessed and began cooperating with the

FBI.[1]  Mahdavi's cooperation enabled the FBI to monitor and record statements by the defendant

explaining and acknowledging his criminal scheme.  On June 25, 2008, the FBI executed a

search warrant at the defendant's office.  The defendant declined to be interviewed during the

execution of the search warrant but volunteered "we don't do mortgages."  Contrary to this

assertion, the fact of the defendant's extensive mortgage fraud business has been confirmed

through evidence obtained during the search and the statements of numerous witnesses.

Shortly after the search warrant, the government informed the defendant he was the target

of the investigation.  At the end of June 2008, during a conference call with the government and

his counsel, the defendant agreed to surrender his passports to the U.S. Attorney's Office.  He

claimed to have only two passports, one U.S. and one Iranian, and he provided both of these to

the government.

---

[1]On November 13, 2008, Mahdavi pleaded guilty.  He was subsequently sentenced to 12
months and 1 day of incarceration.  See United States v. Navid Mahdavi, 1:08cr426-GBL.

Despite claiming to have no travel documents, the defendant fled to Canada on or about July 4, 2008, and then to Iran.  Likely not wanting to drive his own car for fear of arrest, he borrowed the car of a friend by lying that he wanted to use it for a weekend trip to Ocean City, Maryland.  Rather than going to the beach, he and his son Dustin paid another individual to drive them to Canada.  From there, the two flew to Iran.  On July 17, the government obtained an arrest warrant charging the defendant with bank fraud in violation of 18 U.S.C. § 1344 for his role in the fraudulent Mahdavi mortgages.

While in Iran, the defendant committed another crime.  He and Dustin stole money through a "credit bust-out" scheme.  On approximately August 14, 2008, he and Dustin used a fraudulent check for $29,500 to pay off the existing balance on a SunTrust Bank line of credit in the name of one of the defendant's businesses, Infinity Financial.  On the same day, despite knowing the check would not clear but before it was denied by the bank, the defendant transferred the funds to the account of a third party who wired the proceeds to a fourth party according to instructions provided by Dustin and him.  SunTrust Bank lost over $58,000 on a $30,000 line of credit.[2]

The defendant also attempted to interfere with the ongoing investigation of the fraudulent Mahdavi mortgages by tampering with witnesses who were in a position to testify against him.  Talin Zeighani was one of the defendant's girlfriends and also worked for the settlement company, Excellente Settlements, where the Mahdavi loans were supposed to close

---

[2]Dustin returned to the United States in January 2009.  He was arrested for his role in the credit bust-out scheme and is currently detained pending trial.  Prior to Dustin's return, the defendant contacted a bail-bondsman to determine that there was no warrant pending for Dustin's arrest, which, at the time, there was not.

simultaneously.  Zeighani prepared a false and fraudulent HUD-1 settlement statement that was used in the scheme.  Knowing she would be a target of the government's investigation, the defendant and Dustin arranged to get her a one-way ticket to Iran and instructed her to use pay phones rather than her cell phone, apparently because they feared and wanted to prevent law enforcement from listening to their conversations.  Forsaking the trip to Iran for prison in the United States, Zeighani pleaded guilty on August 11, 2008 and is cooperating with the investigation and has provided evidence which incriminates the defendant.

The defendant also attempted to entice another witness, Melanie Ekstrom, not to cooperate.  Ekstrom worked at Preferred Choice with the defendant.  She has stated that the defendant recruited her to help with the fraudulent Mahdavi loans and also that the defendant routinely falsified information for loan applications.  She stated that she had been processing loans at Preferred Choice since September 2007 and that every loan she worked on was fraudulent.[3]  During the defendant's flight from prosecution, he emailed Ekstrom and claimed he would return to help with her case and that he could provide more help if he won his own case. This statement is nothing more than a quid-pro-quo offer to help her in exchange for her not testifying against him.

On April 23, 2008, 10 months after he surrendered his passports and fled to Iran, the defendant flew into Dulles International Airport.  The defendant was taken into custody by officers of the Customs and Border Protection Agency pursuant to the outstanding arrest warrant and was subsequently turned over to the custody of the FBI.

---

[3]Ekstrom pleaded guilty for her role in this offense and was sentenced to 27 months of incarceration on November 14, 2008.

4

The defendant's efforts to obstruct the investigation continued during his detention hearing when he attempted to submit fraudulent documents to the magistrate judge.  Prior to the detention hearing, counsel for the defendant informed the government they would argue that the defendant had not returned sooner because he had been incarcerated while in Iran.  To that end, counsel supplied the government with the translation of a document provided by the defendant – a purported judgment of an Iranian court for "acts of espionage" which stated, among other things, that the defendant was incarcerated in Iran from July 20, 2008 to August 23, 2008, and was thereafter banned from traveling outside of Iran.  But the defendant was not incarcerated in Iran on those dates; he was conducting the aforementioned credit bust-out scheme.  SunTrust Bank records include faxes from him, sent from Dubai, United Arab Emirates, on August 5, 2008, and August 14, 2008, instructing SunTrust Bank where to transfer the funds of that fraudulent scheme.  The government informed defense counsel it believed the Iranian court documents were false and counsel did not introduce them during the detention hearing.

During the hearing, the defendant also misled the magistrate judge about being current on his mortgage payments for his primary residence.  In an apparent effort to make himself appear responsible and of no danger to the financial community, the defendant claimed to be current on all mortgage payments for his primary residence.  The FBI has determined that he defaulted on at least one loan on his primary residence and that it was charged off by National City Bank in October 2008, causing an actual loss of approximately $975,000.

At the conclusion of the hearing, the magistrate judge ordered the defendant released on conditions including: standard travel restrictions, pretrial supervision, the posting of a $5 million bond by the owners of the house where the defendant lives, and that the defendant, and any co-owners, assign the rights to royalties from a patent he holds.

5

### III.     Legal Standards

Title 18, United States Code, Section 3145(a)(1) vests this Court with the authority to

stay the release order and to order defendant's detention pending indictment and trial in this

district.  The statute states that "[i]f a person is ordered released by a magistrate . . . the attorney

for the government may file, with the court having original jurisdiction over the offense, a

motion for revocation of the order . . . ." Id.  See United States v. Velasco, 879 F. Supp. 377, 378

(S.D.N.Y. 1995); United States v. Chagra, 850 F. Supp. 354, 355-356 (W.D. Pa. 1994).

The District Court's review of the release order is de novo. See United States v. Clark,

865 F.2d 1433, 1435 (4th Cir. 1989); United States v. Williams, 753 F.2d 329, 333 (4th Cir.

1985).  The District Court is not limited to the evidence presented below.  It has a responsibility

to reconsider the conditions of release as "if the district court were considering whether to amend

its own action.  It is not constrained to look for abuse of discretion or to defer to the judgment of

the prior judicial officer.  These latter considerations would be pertinent when . . . the district

court's action is called before the court of appeals." United States v. Delker, 757 F.2d 1390,

1394 (3d Cir. 1985) (construing prior review statute as similar to § 3145).

The standard of proof for detention regarding danger to the community is clear and

convincing evidence.  See United States v. Clark, 865 F.2d 1433, 1435 (4th Cir. 1989).

The circuit courts that have directly considered the standard of proof for detention based

on risk of flight have all concluded that the appropriate standard is preponderance of the

evidence.  See, e.g., United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996); United States v.

Jackson, 845 F.2d 1262, 1264 n.3 (5th Cir. 1988); United States v. Himler, 797 F.2d 156, 160

(3rd Cir. 1986); United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985);  United States v.

Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  The Fourth Circuit has been less clear about the appropriate standard.  Several published cases refer in passing to a clear and convincing standard. See, e.g., United States v. Clark, 865 F.2d 1433, 1435 (4th Cir. 1989); United States v. Williams, 753 F2d 329, 332 (4th Cir. 1985).  In a more recent unpublished decision, however, the court specifically held that the appropriate standard is a preponderance of the evidence standard. United States v. Stewart, 2001 WL 1020779 (4th Cir. 2001) (citing decisions in the 6th and 11th Circuits).  We believe the appropriate standard is a preponderance of the evidence standard.

**IV.    The defendant is a danger to the community and presents a risk of flight - - he should be detained**

In considering whether to detain or release a defendant, a court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the person; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community.  18 U.S.C. § 3142(g).  Every one of these factors weighs against the defendant.

First, the crime of mortgage fraud is of paramount significance given the precipitous fall in the real estate market brought about, in part, by criminal acts like those of this defendant.  The maximum punishment for the charged offense is 30 years – a severe sentence which emphasizes the seriousness of the offense.  The nature and circumstances of this specific offense – a $5.5 million dollar mortgage fraud – also indicate that detention is warranted.  Given the intended loss amount, the Sentencing Guidelines call for a significant sentence.  Indeed, Ekstrom was sentenced to a term of 27 months and the defendant is likely facing an even greater period of incarceration given his leadership role in the scheme and his extensive criminal history.  The

7

possibility of spending such an amount of time in jail provides a significant incentive for the defendant to flee.

Second, the case against the defendant is strong.  The evidence includes the testimony of multiple convicted co-conspirators, including Navid Mahdavi, Melanie Ekstrom, and Talin Zeighani, incriminating recorded statements of the defendant, and fraudulent documents obtained during a search of his office.  The fact that the defendant lied to the government and fled in the face of prosecution provide additional evidence of his guilt.

Third, the history and characteristics of the defendant, in and of themselves, present compelling reasons to detain him.  His criminal history includes two felony convictions – one for using the identification of another person to obtain credit.  The pre-trial report lists five separate charges of fugitive from justice.  He has already fled prosecution in this very case.  And although the defendant did return, he did so knowing that he had been able, and therefore likely again would be able, to flee despite travel restrictions.  Additionally, the pre-trial report demonstrates that he has committed new crimes while on probation for past offenses.  Similarly, he committed the credit bust-out scheme while the current charge was pending.  He has attempted to obstruct the government and, during the detention hearing below, the court.

Fourth, the defendant presents a continuing danger to the community.  He is a convicted felon who commits crimes while on supervision and while other charges are pending.  He lies to commit crimes, to obstruct their investigation and to derail their prosecution.  Financial victims flow in his wake.  The only way to protect them is to detain this defendant.

The conditions of release imposed by the Magistrate Judge are insufficient to prevent the flight of the defendant or ensure the safety of the community.  The two conditions which appear

8

most significant are the assignment of patent rights and the posting of a bond secured by real estate.  Closer inspection reveals that neither condition will be effective.

The patent in question is for a product called "Coollid," supposedly invented by the defendant to reduce the temperature of hot coffee and make it immediately drinkable.  This condition of release is insignificant because Coollid has yet to make a single dollar in sales and may never do so.  Highlighting the problem with this condition is the fact that the defendant used his purported Coollid business to further his mortgage fraud by falsely listing loan clients as employees of Coollid in order to get them approved for loans.  The false employees allegedly made significant monthly incomes, in one instance $29,000 per month.  The defendant likely will lose nothing if he loses rights to these patents.  The possibility of surrendering a business whose only success was to furthering fraud will not deter this defendant from again fleeing prosecution.

The secured bond condition of release is also insufficient; there is no equity in the defendant's home.  The defendant reported to pre-trial that he owes $4.5 million on the house whereas the assessed value, as of May 2007, was $2.8 million.  News stories these days are filled with accounts of homeowners walking away from properties that are, like this one, "upside down" on their mortgages.  This defendant has even more to gain because, in walking away, he would also be fleeing possible incarceration.  These and the other conditions of release are insufficient to prevent the defendant's flight and to safeguard the community.  He should be detained.

## V.    Conclusion

Accordingly, the government respectfully requests the Court to revoke the defendant's conditions of release and order him detained pending trial on the charge set forth against him.

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY


By:     /s/
        Edmund P. Power
        Assistant United States Attorney
        Attorney for the United States
        2100 Jamieson Ave.
        Alexandria, VA 22314
        Phone: 703-299-3700
        Fax: 703-837-8242
        Email: ed.power@usdoj.gov

10

<u>CERTIFICATE OF CERVICE</u>

I hereby certify that on the 5th day of May, 2008, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF, which will then send a notification of such filing

(NEF) to the following:

Nina Ginsburg, Esq.
Counsel for the Defendant


_____/s/_____
Edmund P. Power
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Ave.
Alexandria, VA 22314
Phone: 703-299-3700
Fax:  703-837-8242
Email: ed.power@usdoj.gov