IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **MICHAEL MILAN,** | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Criminal No. 1:09cr228** |
| | ) | **Civil Action No. 1:13cv610** |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Petitioner Michael Milan, a federal inmate convicted of conspiracy to commit mail and wire fraud, has filed, by counsel,[1] a motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255.  Petitioner's motion is grounded chiefly on alleged errors he contends were made in his sentencing guidelines calculations; he also raises related claims of ineffective assistance of counsel.  As both parties have fully briefed the issues presented and neither oral argument nor an evidentiary hearing would aid the decisional process, petitioner's motion is ripe for disposition.[2]  And, for the reasons that follow, petitioner's motion must be denied in all respects.

### I.

A brief summary of the factual and procedural history of the case places petitioner's

---

[1]  In fact, petitioner has been represented by three separate retained counsel since the initiation of this § 2255 proceeding, and various delays and extensions attributable to petitioner's first two retained attorneys have contributed to the resulting delay in resolution of the instant petition.

[2]  Although petitioner requests an evidentiary hearing, 28 U.S.C. § 2255 states that a hearing is not necessary when "the motion and the files of the case conclusively show that the prisoner is entitled to no relief."  In this case, a hearing is not necessary as the record conclusively compels the conclusion that petitioner's claims fail on their merits.  *See United States v. Witherspoon,* 231 F.3d 923, 925-26 (4th Cir. 2000); *United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief"); *see also* Rule 78(b), Fed. R. Civ. P.

motion in context.   Thus, the record reflects that from August 2006 through August 2008, petitioner participated with others in a conspiracy to defraud financial institutions and mortgage lenders through the use of the United States mail system and interstate electronic communications. In essence, petitioner and several co-conspirators provided false and misleading information to various mortgage lenders in order to obtain loan proceeds fraudulently, and/or to collect fees associated with the processing of the fraudulent loan applications.   The fraudulent mortgage loans involved properties in Maryland, Virginia, and Florida, and multiple financial institutions were victims of the fraudulent scheme.

On November 30, 2009, petitioner pled guilty to Count One of a twelve-count Superseding Indictment charging him with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349.[3]   As part of the written Plea Agreement, petitioner and the government jointly agreed to recommend to the Court at sentencing that certain guidelines provisions applied to this case, pursuant to Rule 11(c)(1)(B), Fed. R. Crim. P.   Specifically, the parties agreed, *inter alia*, (i) that petitioner's base offense level should be 7, pursuant to U.S.S.G. § 2B1.1, (ii) that 18 points should be added pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the amount of actual loss reasonably foreseeable to petitioner was greater than $2,500,000 but less than $7,000,000, (iii) that 2 points should be added pursuant to U.S.S.G. § 3B1.1(c) because petitioner was a manager and/or supervisor of criminal activity, and (iv) that 2 points should be added pursuant to U.S.S.G. § 3C1.1 for obstruction of justice.[4]   *See* Plea Agreement (Doc. 126),[5] at ¶ 4.   The parties also expressly

---

[3]   The remaining eleven counts of the Superseding Indictment were dismissed on the government's motion.   *See United States v. Milan*, 1:09cr228 (E.D. Va. Nov. 30, 2009) (Order).

[4]   The 2-level obstruction enhancement is based on the following facts, stipulated to by petitioner in Paragraphs 13 and 14 of the signed Statement of Facts filed at the time of his guilty plea:

agreed in the Plea Agreement that "the United States is free to argue (and the defendant is free to dispute)" the applicability of (i) a 3-point or 4-point role enhancement pursuant to U.S.S.G. § 3B1.1(a), rather than just the 2-point role enhancement agreed to by the parties; and (ii) a 2-point enhancement for the receipt of more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, pursuant to U.S.S.G. § 2B1.1(b)(14)(A).  *Id.*

Prior to sentencing, the Probation Officer conducted a detailed investigation and prepared a Presentence Investigation Report (PSIR) calculating petitioner's initial base offense level as 7, pursuant to U.S.S.G. § 2B1.1(a)(1), which was consistent with the parties' agreed recommendation in the Plea Agreement.  The Probation Officer then increased this base offense level by 25 levels in accordance with the following guidelines provisions: (i) 18 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the loss was more than $2,500,000 but less than $7,000,000, (ii) 2 levels pursuant to U.S.S.G. § 2B1.1(b)(14)(A) because petitioner derived more than $1,000,000

---

13.  After the execution of a search warrant on his office in June 2008, the defendant fled the United States and did not return until April, 2009.  Prior to his return and for the purpose of explaining the extended length of his flight from the United States, the defendant caused the preparation of false Iranian court documents which purported to indicate that he had been incarcerated in Iran during July and August 2008 and had not been permitted to travel outside of Iran until February 2009.

14.  On May 1, 2009, the defendant willfully attempted to obstruct the prosecution of this case by attempting to submit the false Iranian court documents during his detention hearing.  Although the documents ultimately were not submitted, they were provided to the government in anticipation of being submitted and, during the hearing, the defendant's attorney referred to the fact that he had been incarcerated while in Iran.

Statement of Facts (Doc. 127), at ¶¶ 13-14.

[5] The "Doc." numbers included throughout this opinion refer to the location of the specific document in the district court's electronic case file.

in gross receipts from one or more financial institutions, (iii) 3 levels pursuant to U.S.S.G. §
3B1.1(b) because petitioner was a manager or supervisor and the criminal activity involved five or
more participants or was otherwise extensive, and (iv) 2 levels pursuant to U.S.S.G. § 3C1.1 for
obstruction of justice.  Finally, the Probation Officer reduced petitioner's adjusted offense level
by 3 levels pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total
offense level of 29.  This, combined with the Probation Officer's calculation of a criminal history
category IV,[6] resulted in a recommended guidelines range of imprisonment of 121 to 151 months
in the PSIR.

Following receipt of the PSIR, petitioner, by former retained counsel, filed two lengthy
sentencing memoranda raising numerous objections to the factual information and guidelines
calculations set forth in the PSIR.  For example, petitioner objected to the 2-level enhancement to
his offense level pursuant to U.S.S.G. § 2B1.1(b)(14)(A) for deriving more than $1,000,000 in
gross receipts from one or more financial institutions.   Petitioner also objected to the
government's request—made in its corresponding sentencing memorandum—for a 4-level role
enhancement pursuant to U.S.S.G. § 3B1.1, rather than a 3-level role enhancement recommended
in the PSIR.  Finally, petitioner objected to the Probation Officer's calculation of his criminal
history category as IV, arguing that he should not have been assessed 2 points for committing the
instant offense while serving a California term of unsupervised probation, which term petitioner

---

[6] In the PSIR, petitioner was assessed a total of 7 criminal history points, comprised of the
following: (i) 1 point for a February 18, 2000 California state conviction for reckless driving (Case
#9MA01611), (ii) 2 points for a May 6, 2004 federal conviction for mail fraud, filed in the U.S.
District Court for the District of Maryland (Case #PJM-00-312), (iii) 2 points for a July 25, 2005
California state conviction for making false financial statements and unauthorized use of personal
identifying information (Case #00NF1426), and (iv) 2 points for committing the instant offense
while serving a 3-year term of unsupervised probation imposed on petitioner's July 25, 2005
California state conviction for making false financial statements and unauthorized use of personal
identifying information.

and the government apparently believed had already concluded at the time of the instant offense. In the alternative, petitioner moved for a downward departure in his criminal history category from IV to III, pursuant to U.S.S.G. § 4A1.3, on the ground that Category IV substantially overstated the seriousness of his criminal history.

In the course of a lengthy sentencing hearing held on March 12, 2010, petitioner's objections to the factual information and guidelines calculations set forth in the PSIR were sustained in part and overruled in part. Specifically, petitioner's factual objections were sustained insofar as 11 paragraphs of the PSIR were modified in certain respects, and the remaining factual objections were overruled. *See United States v. Milan*, 1:09cr228 (E.D. Va. Mar. 12, 2010) (Order) (noting that paragraphs 18, 19, 21, 22, 30, 32, 33, 39, 40, 44 and 103 of the PSIR were modified in response to petitioner's factual objections). With respect to the guidelines calculations, petitioner's motion pursuant to U.S.S.G. § 4A1.3 for a reduction in his criminal history category was granted, and his criminal history category was accordingly reduced from IV to III. *Id.* The remainder of petitioner's objections to the guidelines calculations set forth in the PSIR were overruled. *Id.* Thus, petitioner's resulting offense level was calculated as 29, as set forth in the PSIR, and his advisory guidelines range of imprisonment (after the § 4A1.3 criminal history departure from category IV to category III) was 108 to 135 months. In the end, following petitioner's allocution and the arguments of counsel, petitioner was sentenced to 108 months imprisonment on the instant offense, to be followed by three years of supervised release. Petitioner was also ordered to pay restitution to the various victims of his offense in the total amount of $3,141,409—the amount expressly agreed to by the parties in the Plea Agreement.

Petitioner did not appeal his conviction or sentence to the Court of Appeals for the Fourth Circuit, as he had waived his appeal rights as part of his Plea Agreement with the government.

5

Instead, on May 16, 2013—more than <u>three</u> years after his conviction became final—petitioner, by

retained counsel different from the retained counsel who represented petitioner throughout the

plea and sentencing proceedings, filed the instant motion to vacate, set aside or correct his

sentence, pursuant to 28 U.S.C. § 2255.   In the motion, petitioner raises five claims, identified by

petitioner as follows:

> GROUND ONE:  The Sentencing Court relied upon both factual and legal inaccuracies in the Pre-Sentencing Investigation Report ("PSIR") to wrongly conclude that Petitioner Milan was a Level IV offender.
>
> GROUND TWO:  Subsequent to sentencing, two of Petition [sic] Milan's underlying state convictions were dismissed, effectively reducing Petitioner Milan's criminal history level to Level II.
>
> GROUND THREE:  The Government breached the Plea Agreement with Petitioner Milan by utilizing information provided by Petitioner Milan, pursuant to his agreement to cooperate ostensibly without penalty, to instead enhance his sentence.
>
> GROUND FOUR:  Newly discovered facts, undiscoverable by due diligence, verify that Petitioner Milan should have not received a sentencing enhancement for receipt of $1,000,000 or more from financial institutions, as a result of the offense.
>
> GROUND FIVE:  Newly discovered facts, undiscoverable by due diligence, verify that the actual loss attributed should have been between $1,000,000 and $2,500,000, instead of between $2,500,000 and $7,000,000.

Pet. Br. (Doc. 354) at 7.   Additionally, interspersed throughout these five claims, petitioner also

makes related arguments that he received ineffective assistance of counsel throughout the plea and

sentencing proceedings, in violation of the Sixth Amendment.

## II.

All of petitioner's § 2255 claims are governed by several key legal principles. First, it is

well-settled that a one-year period of limitation applies to any motion to vacate, set aside or correct

6

sentence filed pursuant to 28 U.S.C. § 2255.  In this regard, the statute expressly provides that the

one-year period shall run from the latest of:

> (1)    the date on which the judgment of conviction becomes final;
>
> (2)    the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)    the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)    the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Next, the Fourth Circuit has held that "[b]arring extraordinary circumstances . . . an error in

the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." *United

States v. Pregent*, 190 F.3d 279, 283-84 (4th Cir. 1999).  Indeed, in order to warrant collateral

relief pursuant to § 2255 based on an alleged sentencing error, a petitioner serving a federal

sentence must establish

> that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, *or that the sentence was in excess of the maximum authorized by law*, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a) (emphasis added).  Thus, as recognized by the Fourth Circuit, "while § 2255

applies to violations of statutes establishing maximum sentences, it does not usually apply to errors

in the application of the Sentencing Guidelines," as alleged by petitioner here.  *Pregent*, 190 F.3d

at 284 (citations omitted).[7]   Moreover, because *Pregent* was decided at a time when the sentencing guidelines were still mandatory on sentencing courts, the principle announced in *Pregent* is even stronger now that the guidelines are merely advisory, as they were at the time of petitioner's sentencing.   *See, e.g., Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1280 (2014) (recognizing that post-*Booker[8]*—once the guidelines were no longer mandatory on district courts—errors in a defendant's guidelines calculations were "less serious," and as long as the sentence imposed was beneath the statutory maximum, it was not subject to correction on collateral review based on alleged errors in the guidelines calculations).

Finally, it is well-established that § 2255 claims of ineffective assistance of counsel, such as those raised by petitioner here, are governed by a two-prong legal analysis.   *See Strickland v. Washington*, 466 U.S. 668, 688-89 (1984).   Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, first, that counsel's performance "fell below an objective standard of reasonableness."   *Id.* at 688.   Judicial review of counsel's performance in this context is "highly deferential."   *Id.* at 689.   Indeed, to establish that counsel's performance was objectively unreasonable, a petitioner must overcome the strong presumption that counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable

---

[7] *See also United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999) (noting that "misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice"); *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (holding that absent a "miscarriage of justice," ordinary questions of guidelines interpretation are not cognizable on collateral review); *Scott v. United States*, 997 F.2d 340, 341 (7th Cir. 1993) (stating that "[a] claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum"); *Knight v. United States*, 37 F.3d 769, 773-74 (1st Cir. 1994) (holding that misapplication of the sentencing guidelines is generally not a proper § 2255 claim); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (noting that "[a] district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255").

[8] *United States v. Booker*, 543 U.S. 220 (2005).

judgment." *Id.* at 690. If a petitioner demonstrates that counsel's performance was objectively unreasonable, *Strickland* next requires the petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 688. Thus, in step two of the *Strickland* analysis, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A proper prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. It is through the lens of these guiding principles that petitioner's claims must be analyzed.

## III.

In Count One, petitioner essentially claims that he was wrongly classified in the PSIR as a Criminal History Category IV, and that he instead should have been classified as a Criminal History Category III.[9] This claim fails for several reasons.

First, the claim is clearly time-barred given that petitioner's § 2255 motion was filed more than three years after his conviction became final. 28 U.S.C. § 2255(f)(1). In an attempt to avoid this result, petitioner argues that this particular claim is governed by the alternative one-year limitation period set forth in § 2255(f)(2), involving situations where a petitioner is prevented from

---

[9] Specifically, petitioner contends that he should have been assessed only 1 criminal history point, rather than 2, for his July 25, 2005 California state conviction for making false financial statements and unauthorized use of personal identifying information (Case #00NF1426). *See supra*, n. 6. In support of this argument, petitioner contends that although this prior state offense was charged as a felony, it should only be counted as a misdemeanor for sentencing guidelines purposes in light of the sentence ultimately imposed by the state court. *See generally* U.S.S.G. § 4A1.1.

raising a timely claim as a result of some affirmative governmental action.[10]   Yet significantly, petitioner has failed to identify any qualifying governmental action that prevented him from raising this particular claim within one year of his conviction date, as required to trigger application of § 2255(f)(2).[11]   Count One must therefore be rejected at the outset as untimely.

Even assuming Count One had been timely filed, the claim would nonetheless fail on the merits.  Indeed, the claim is clearly foreclosed by the Fourth Circuit's holding in *Pregent*.  *See Pregent*, 190 F.3d 283-84 (holding that "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding").  No such extraordinary circumstances have been presented by petitioner here.[12]   To the contrary, as already noted, petitioner was actually granted a § 4A1.3 downward departure in his criminal history

---

[10]   *See* 28 U.S.C. § 2255(f)(2) (providing that the one-year limitations period shall run from the latest of, *inter alia*, "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action").

[11]   In this regard, petitioner appears to argue that the specific "governmental action" that would trigger commencement of § 2255(f)(2)'s one-year limitation period is the actual correction of the PSIR that petitioner requests in the instant § 2255 motion.  In other words, petitioner seems to argue that the one-year limitation period has not even begun to run for purposes of § 2255(f)(2).  *See* Pet. Mot. (Doc. 353), at p.6 (where petitioner states as follows: "Petitioner Milan is not time barred from bringing this claim by operation of 28 U.S.C. § 2255(f)(2), in that Petitioner Milan's one-year statute began to run after the 'governmental action in violation of the Constitution or laws of the United States is removed;' namely the correction of Petitioner Milan's PSIR"); Pet. Br. (Doc. 354), at p. 10 (where petitioner states as follows: "28 U.S.C. § 2255(f)(2) allows for Petitioner Milan to bring this claim within one year from when that violation is removed. Petitioner Milan's sentence should be corrected, in that the one year statutory period for this ground has yet to commence.").   This argument is wholly unpersuasive—almost nonsensical—and must be rejected.

[12]   One recognized "extraordinary" circumstance where *Pregent* would not foreclose a guidelines-related § 2255 claim is when the claim alleges an erroneous application of the career offender enhancement pursuant to U.S.S.G. § 4B1.1, as the "the impact of the career offender enhancement is far from ordinary."  *United States v. Whiteside*, 748 F.3d 541, 552 (4th Cir. 2014) *rehearing en banc granted, Whiteside v. United States*, ___ F. App'x ___, 2014 WL 3377981 (4th Cir. July 10, 2014).   That extraordinary circumstance, of course, is not involved in this case.

category at sentencing, from category IV to category III, based essentially on the same arguments presented in the instant motion. For this same reason, petitioner is unable to establish that his former retained counsel rendered ineffective assistance with respect to petitioner's criminal history calculation, or that his case was somehow prejudiced by counsel's performance in this regard.

Simply put, therefore, Count One of petitioner's § 2255 motion must be denied as untimely, but the claim would nonetheless fail on the merits.

## IV.

In Count Two, petitioner contends that two California state convictions for which he was assessed criminal history points in the PSIR were "dismissed" by the state court subsequent to sentencing in this matter.[13] Because of this, petitioner contends that his criminal history must be recalculated and that a resentencing hearing must be held. Petitioner is mistaken in both respects.

As already noted, petitioner was assessed a total of 7 criminal history points in the PSIR. *See supra* n. 6. This total included, *inter alia*, (i) one point for a February 18, 2000 California state conviction for reckless driving (Case #9MA01611), and (ii) four points for a July 25, 2005 California state conviction for making false financial statements and unauthorized use of personal identifying information (Case #00NF1426)—two for the conviction itself, and an additional two

---

[13] In *Johnson v. United States*, the Supreme Court acknowledged a petitioner's right to attack a federal sentence that was based, in part, on a criminal history that took into account prior convictions that were subsequently vacated after the imposition of sentence. 544 U.S. 295, 304 (2005). The Supreme Court further recognized that such a claim would be timely under § 2255 provided it was filed within one year after the prior conviction was vacated, and provided the petitioner exercised due diligence in obtaining relief on the prior conviction. *Id.* Here, the record reflects that petitioner's § 2255 petition was filed within one year after he was granted relief from the California state court on his previous state convictions. And although the record is far from clear on this issue, it is assumed for purposes of the instant analysis that defendant exercised due diligence in seeking such relief from the California state court.

for committing the instant federal offense while serving a term of unsupervised probation on that state conviction.

In the instant motion, petitioner contends that following his March 12, 2010 sentencing in this matter, he took steps to have his two prior California state convictions "dismissed" pursuant to § 1203.4 of the California Penal Code.   Section 1203.4 is essentially an administrative procedure whereby an individual who has successfully completed a California term of probation can petition the state court to set aside the underlying criminal conviction.   The statute provides, in pertinent part, as follows:

> In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code.

Cal. Penal Code § 1203.4(a)(1).

Petitioner has attached documentation to his § 2255 motion reflecting that the Superior Court of California did, in fact, grant petitioner relief pursuant to § 1203.4 with respect to the two California state convictions for which he was assessed criminal history points in the PSIR.   In this regard, petitioner has provided uncertified copies of (i) a May 21, 2012 Order from the Superior Court of California, County of Orange, in Case #00NF1426, and (ii) a September 12, 2012 Order

from the Los Angeles Superior Court in Case #9MA01611.   In both Orders, the California state court granted petitioner the requested relief pursuant to § 1203.4 and "ordered that the plea, verdict, or finding of guilt [in each case] be set aside and vacated and a plea of not guilty be entered and that the complaint be, and is hereby, dismissed."   *See* Exhibits to Pet. Br. (Docs. 354, 360).[14]

In light of the § 1203.4 "dismissal" of his two California convictions, petitioner now claims that his criminal history in this case must be recalculated—and that he must be resentenced—in accordance with § 4A1.2(j) of the sentencing guidelines.   Section 4A1.2(j) provides that for purposes of calculating a defendant's criminal history, "[s]entences for expunged convictions are not counted, but may be considered under § 4A1.3 (Adequacy of Criminal History Category)." U.S.S.G. § 4A1.2(j).   Not surprisingly, petitioner does not acknowledge or cite Application Note 10 to § 4A1.2, which provides the following instructive commentary:

> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction.   *Sentences resulting from such convictions are to be counted* [in a defendant's criminal history calculation].   However, expunged convictions are not counted.

U.S.S.G. § 4A1.2(j), cmt. n. 10 (emphasis added).

Here, it clear that the § 1203.4 dismissals of petitioner's two California convictions fall squarely within the state procedures described in Application Note 10.   Indeed, fatal to petitioner's § 4A1.2(j) argument is the fact that a § 1203.4 dismissal by a California state court

---

[14] Although neither party addresses this issue in their respective briefs, it is important to note that petitioner likely should <u>not</u> have been granted § 1203.4 relief with respect to either California state conviction.   Indeed, the statute expressly provides that such relief is only available to a defendant "if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense."   Cal. Penal Code § 1203.4(a)(1).   Here, of course, petitioner was serving his custody sentence on the instant federal conviction when he petitioned for, and ultimately received, relief pursuant to § 1203.4 from the two California state courts.

does <u>not</u> require a showing of legal or factual error in the earlier state proceeding.   Moreover, as

the statute itself makes clear, there are substantial limitations placed on a § 1203.4 dismissal.   For

example, § 1203.4 expressly provides, *inter alia*, (i) that "[d]ismissal of an accusation or

information pursuant to this section does not permit a person to own, possess, or have in his or her

custody or control any firearm," and (ii) that "[d]ismissal of an accusation or information

underlying a conviction pursuant to this section does not permit a person prohibited from holding

public office as a result of that conviction to hold public office."   Cal. Penal Code § 1203.4(a).

The California statute also provides that "in any subsequent prosecution of the defendant for any

other offense, the prior conviction may be pleaded and proved and shall have the same effect as if

probation had not been granted or the accusation or information dismissed."   *Id.*

Thus, a review of the state statute makes clear that any relief granted by a California state

court pursuant to § 1203.4 is wholly "unrelated to innocence or errors of law;" such relief also

carries with it substantial limitations, including those noted above pertaining to firearms, public

office, and subsequent prosecutions.   U.S.S.G. § 4A1.2(j), cmt. n. 10.   These circumstances point

convincingly to the conclusion that a § 1203.4 dismissal falls within the state administrative

procedures contemplated by Application Note 10, *supra*, and that petitioner's two prior California

convictions were thus not "expunged" for purposes of § 4A1.2(j) of the sentencing guidelines.

This conclusion also finds firm support in the Ninth Circuit's holding in *United States v.*

*Hayden*, 255 F.3d 768 (9th Cir. 2001).   The *Hayden* court was presented with the precise question

involved here, namely "whether a conviction 'set aside' pursuant to the California probation

statute [§ 1203.4] is an 'expunged' conviction under the United States Sentencing Guidelines."

*Id.* at 769.   And there, the Ninth Circuit stated the following:

> California courts have consistently viewed section 1203.4 as a
> statute which provides a limited form of relief.   A section 1203.4

> order does not "erase" or "expunge" a prior conviction, and a
> conviction set aside pursuant to this statute falls under § 4A1.2's
> general rules governing federal courts' use of prior convictions, and
> not under § 4A1.2(j)'s exception for "expunged" convictions.

*Id.* at 772.   In other words, the Ninth Circuit expressly held in *Hayden* that "[a] conviction set aside pursuant to California Penal Code section 1203.4 is not 'expunged' under Sentencing Guideline § 4A1.2(j)." *Id.* at 774.   Given this, the court concluded that a § 1203.4 dismissal of a defendant's prior state conviction did not entitle that defendant "to a recalculated criminal history score or a recomputed federal sentence." *Id.* at 775.   For the reasons already stated, an identical conclusion is required here and Count Two of petitioner's § 2255 must therefore be denied.[15]

## V.

In Count Three, petitioner contends that the government breached ¶ 13 of the Plea Agreement by causing his sentence to be enhanced based on information petitioner contends he provided pursuant to his cooperation agreement.[16]   Petitioner bases this claim on the fact that he received a two-level enhancement to his offense level for obstruction of justice, pursuant to

---

[15] Petitioner does not appear to assert a separate ineffective assistance of counsel argument with respect to Count Two.   But even if he had, such a claim would clearly fail given that petitioner would not be able to establish that his counsel was ineffective with respect to the allegations set forth in Count Two—for example, by not petitioning the California state court for § 1203.4 relief prior to sentencing in this matter—or that he was prejudiced by counsel's performance in any respect. *See Strickland*, 466 U.S. at 688-89.

[16] Paragraph 13 of petitioner's Plea Agreement provides, in pertinent part, as follows:

> The United States will not use any truthful information provided
> pursuant to this agreement in any criminal prosecution against the
> defendant in the Eastern District of Virginia. . . . Pursuant to
> U.S.S.G. section 1B1.8, no truthful information that the defendant
> provides under this agreement will be used in determining the
> applicable guideline range, except as provided in section 1B1.8(b).

Plea Agreement (Doc. 126), at ¶ 13.

U.S.S.G. § 3E1.1, in light of the information he disclosed to the government in a pre-plea proffer session concerning the falsified Iranian documents purporting to establish his incarceration in Iran. *See* supra, n.4

Count Three, like Count One, is clearly time-barred given that it was filed in May 2013, more than three years after petitioner's conviction became final and long after the § 2255(f)(1) one-year statute of limitations had expired.   Petitioner again relies on § 2255(f)(2) in attempt to avoid this result, but again, he fails to identify any qualifying governmental action that prevented him from raising this particular claim within one year of his final conviction date.   *See* 28 U.S.C. § 2255(f)(2) (recognizing that the alternative one-year limitation period runs from "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action").

In any event, notwithstanding the fact that Count Three is time-barred, the claim must also be denied on the merits.   Like Count One, Count Three is foreclosed by the Fourth Circuit's holding in *Pregent*.   *See Pregent*, 190 F.3d at 283-84 (holding that "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding").   Moreover, § 1B1.8 of the Sentencing Guidelines—both in the current version and in the version in effect at the time of petitioner's sentencing—provides that:

> [w]here a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, *except to the extent provided in the agreement.*

U.S. Sentencing Guidelines Manual, § 1B1.8(a) (Nov. 1, 2009 and Nov. 1, 2013 versions)

(emphasis added).   Here, the very agreement that petitioner claims the government breached expressly provides that a two-level enhancement for obstruction of justice was appropriate pursuant to U.S.S.G. § 3C1.1.   Indeed, ¶ 4 of petitioner's Plea Agreement provides, in pertinent part, that:

> in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the Court that the following provisions of the Sentencing Guidelines apply: . . . d.  Pursuant to § 3C1.1, two points are added because the defendant willfully attempted to obstruct and impeded the administration of justice with respect to the prosecution of the instant offense and the obstructive conduct related to the defendant's offense of conviction and relevant conduct.

Petitioner also signed a sworn Statement of Facts in which he stipulated to the facts underlying the two-level obstruction of justice enhancement that was applied at sentencing. *See supra*, n. 4. Thus, because petitioner expressly agreed in his plea agreement that a two-level obstruction enhancement was warranted pursuant to U.S.S.G. § 3C1.1, and because petitioner stipulated to the facts underlying that enhancement in his Statement of Facts entered at the time of his plea hearing, Count Three necessarily fails on the merits.

Finally, petitioner has failed to establish that his counsel rendered ineffective assistance in the course of the plea or sentencing proceedings with respect to the obstruction enhancement, as petitioner contends.   In this regard, not only has petitioner failed to demonstrate that counsel's performance with respect to the two-level enhancement "fell below an objective standard of reasonableness," but he also cannot overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 688, 690; *see also Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (applying the *Strickland* principles to cases involving guilty pleas).   This is particularly so given

that the record reflects that application of the two-level obstruction enhancement was proper in all respects.   Indeed, it is clear from the record that petitioner disclosed the information underlying the obstruction enhancement in a pre-plea proffer session with the government, long before he signed the plea agreement and entered his guilty plea in this case.   Application of the two-level enhancement was thus consistent both with ¶ 13 the Plea Agreement and with U.S.S.G. § 1B1.8, and Count Three must be denied in its entirety.[17]

## VI.

In Count Four, petitioner contends that alleged "newly discovered facts" confirm that he should not have received a two-level sentencing enhancement pursuant to U.S.S.G. § 2B1.1(b)(14)(A) for deriving more than $1,000,000 in gross receipts from one or more financial institutions.   In support of this argument, petitioner relies exclusively on an affidavit from Melanie Ekstrom, one of his co-conspirators in the fraudulent mortgage scheme.

Count Four, like Counts One and Three, is time-barred.   As already noted, *supra* Part II, the one-year limitations period applicable to § 2255 claims based on newly discovered facts, as alleged by petitioner in Count Four, runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."   28 U.S.C. § 2255(f).   Here, not only is Ms. Ekstrom's affidavit inherently unreliable given that she was one of petitioner's co-conspirators, but more importantly, all of the information set forth in the affidavit

---

[17]   Although not necessarily dispositive of the ineffective assistance of counsel claims raised here, it is nonetheless important to note that in the course of the March 12, 2010 sentencing hearing, petitioner acknowledged in open court that he was "fully satisfied with the advice and counsel" that he had received from his counsel up to the time of sentencing.   *See* 3/12/2010 Sent. Tr. (Doc. 350), p. 9.   Petitioner's knowing and voluntary Plea Agreement—signed by petitioner on November 30, 2009—also includes petitioner's acknowledgment that, as of the time of the plea, he was "satisfied that [his counsel] ha[d] rendered effective assistance."   Plea Agreement (Doc. 126) at ¶ 3.

was discoverable by petitioner years before he filed the instant § 2255 motion.   In an attempt to avoid this result, petitioner contends that the information could not have been discovered earlier because "prior to the date of her affidavit, Ms. Ekstrom was unwilling to disclose these facts." Pet. Mot. (Doc. 353) at 12.   Yet, even assuming this were true, none of the financial-related statements set forth in Ms. Ekstrom's affidavit represent unique knowledge held exclusively by Ms. Ekstrom.   Rather, all of the financial allegations set forth in the affidavit could have been discovered by petitioner by means other than Ms. Ekstrom herself, including, for example, by a careful examination of the pertinent bank records and mortgage documents.   Accordingly, because the information set forth in Ms. Ekstrom's affidavit "could have been discovered through the exercise of due diligence" years ago, and likely even before sentencing, Count Four is clearly barred by § 2255's one-year statute of limitations.

Notwithstanding the issue of untimeliness, Count Four must also be denied given the Fourth Circuit's holding in *Pregent*, discussed *supra*.   *See Pregent*, 190 F.3d 283-84 (holding that "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding").   Count Four also flatly fails on the substantive merits. In this regard, the pertinent portions of Ms. Ekstrom's affidavit are set forth here:

> 5.   Specifically, in the summer of 2007, I was employed by Congressional Funding USA, LLC, located in Rockville, Maryland. It was [during] this time that Michael Milan acquired a resident [sic] at 9204 Redwood Avenue, Bethesda, Maryland.   I was the person at Congressional Funding that processed and submitted loan applications and loan documents on behalf of Michael Milan for the purchase of this residence.

> 6.   These loans included, a first deed of trust in the amount of approximately $1.96 million from Mortgage IT (now Wells Fargo), and a second trust loan from National City Bank in the approximate amount of $420,000.

> 7.   Subsequently, I processed a loan for Michael Milan from

19

National City Bank again, in the amount of $975,000[.]  It was this loan that was alleged by the Government to be fraudulent, as a result of Michael Milan's submittal of pay stubs to verify income, which the Government claimed had been fabricated.

8.  The use of proceeds from the $975,000 National City Bank loan were primarily for two purposes, repayment of the earlier $420,000 loan in full, as well as to satisfy a shortage in paying the $2,800,000 purchase price of the residence.

9.  I am unaware if Michael Milan actually received any proceeds of the $975,000 loan, because after the transfer taxes and closing cost added to the purchase price of the $2.8 mil[lion], most, if not all of the proceeds of $975,000 was used in addition to the first trust loan of $1.960 [million], in order to finalize this purchase transaction for $2,800,000.

10.  Further, the $420,000 second trust loan from National City Bank was for a stated income loan program that did not require supportive documentation, including but not limited to pay stubs. All that [was] required was that the borrower maintained a minimum credit score of 680, which Michael Milan qualified.  As such, I was not aware that the Government claimed the $420,000 loan had been obtained fraudulently, and I know of no basis that the Government could make such a claim.

11.  In that Michael Milan both did not receive anywhere close to $1,000,000 Gross proceeds from the $975,000 loan from National City Bank, since it required pay off of their earlier $420,000 loan with them, and that there was no fraud associated with the earlier $420,000 loan, it is my opinion that any sentencing enhancement for fraudulently receiving over $1,000,000 in Gross proceeds from National City Bank is irreconcilable with the facts known to me.

Ekstrom Aff. ¶¶ 5-11.  Essentially, Ms. Ekstrom appears to be arguing that because a significant portion of the fraudulently-obtained $975,000 National City Bank loan was used to pay off an earlier non-fraudulent loan from the same lender, only a portion of the $975,000 should be included in the gross receipts calculation for purposes of the two-level sentencing enhancement pursuant to § 2B1.1(b)(14)(A).  This argument is entirely unpersuasive and must be rejected. Simply put, after the various financial transactions discussed by Ms. Ekstrom in her affidavit were

completed, petitioner no longer owed National City Bank the original, non-fraudulent $420,000 loan;   instead, he owed National City Bank the full amount of the $975,000 loan that petitioner admitted he obtained by fraudulent means.   The entire amount is therefore properly included in the § 2B1.1(b)(14)(A) gross proceeds calculation.   And this amount, combined with the various other fees and proceeds petitioner received as a result of the fraudulent scheme, clearly satisfy the $1,000,000 threshold limit for application of the two-level enhancement.

Finally, petitioner is unable to meet the two-prong *Strickland* ineffective assistance of counsel standard with respect to the allegations set forth in Count Four.   In this regard, petitioner contends that his counsel was ineffective by not preventing the two-level § 2B1.1(b)(14)(A) enhancement from being applied at sentencing.   Yet, a thorough review of the lengthy sentencing memoranda submitted by counsel on petitioner's behalf, as well as the transcript from the March 12, 2010 sentencing hearing, reflects that petitioner's counsel actually objected to application of the enhancement on grounds far less frivolous than the one raised by petitioner in the instant motion.   *See* 3/12/2010 Sent. Tr. (Doc. 350), pp. 71-92.   In the end, however, despite the zealous arguments of petitioner's counsel, his objection to the two-level enhancement pursuant to § 2B1.1(b)(14)(A) was properly overruled at sentencing.   Nothing raised by petitioner in the instant motion alters this conclusion.[18]   In the circumstances, therefore, petitioner's claim in Count Four must be denied in all respects.

## VII.

Finally, in Count Five, petitioner contends that alleged "newly discovered facts" establish

---

[18]   Petitioner's related argument that his counsel was ineffective in failing to interview Ms. Ekstrom prior to sentencing and to call her as a witness at the sentencing hearing likewise fails given that nothing in Ms. Ekstrom's affidavit alters the § 2B1.1(b)(14)(A) analysis in any respect. *See supra.*

that the actual loss amount suffered by the victims of his fraudulent scheme was between $1,000,000 and $2,500,000, rather than between $2,500,000 and $7,000,000 as determined at the time of sentencing.   Petitioner thus contends that his guidelines must be recalculated pursuant to U.S.S.G. § 2B1.1(b)(1)[19] and that a resentencing hearing must be held.

In support of this argument, petitioner has produced a largely unexplained mass of bankruptcy and real estate records pertaining to various financial transactions that have allegedly occurred since the time of sentencing concerning four properties involved in petitioner's fraudulent scheme.   Petitioner also notes, *inter alia*, the following:

> The Court is reminded that during sentencing the issues of lack of foreclosures on the properties and inability to determine final actual loss amounts were presented. The final actual losses are now determinable, and . . . the actual loss values are far less than what was presented at sentencing . . ..

Pet. Br. (Doc. 373) at p.10.   According to petitioner, the documents that he has now produced establish that the actual losses ultimately suffered by the victims to his fraudulent scheme totaled less than $2,000,000.

Assuming, solely for purposes of argument, that Count Five is timely under § 2255, the claim nonetheless fails on the merits.   Specifically, Count Five—like Counts One, Three, and Four— must be denied pursuant to the Fourth Circuit's holding in *Pregent*, discussed *supra*, and the absence of any extraordinary circumstances in this case.   *See Pregent*, 190 F.3d 283-84 (holding that "[b]arring extraordinary circumstances . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding").   Indeed, the loss amount attributed to a defendant at sentencing for purposes of U.S.S.G. § 2B1.1(b)(1) is a perfect example

---

[19] Section 2B1.1(b)(1) provides that a defendant's base offense level should be increased by 16 levels if the loss was "[m]ore than $1,000,000," and by 18 levels if the loss was "[m]ore than $2,500,000."   U.S.S.G. § 2B1.1(b)(1)(I)-(J).

of an "ordinary" guidelines-related determination that is not subject to collateral attack under *Pregent*. *See Auman*, 67 F.3d at 161 (holding that absent a "miscarriage of justice," ordinary questions of guidelines interpretation are not cognizable on collateral review).

Count Five also fails on the merits given that petitioner expressly agreed in his Plea Agreement that the loss attributable to his criminal conduct was between $2,500,000 and $7,000,000. In this regard, ¶ 4 of petitioner's Plea Agreement provides as follows:

> [I]n accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the Court that the following provisions of the Sentencing Guidelines apply: . . . b. Pursuant to § 2B1.1(b)(1)(I), 18 points are added to the offense level because the amount of actual loss reasonably foreseeable to the defendant was greater than $2,500,000 but less than $7,000,000.

Plea Agreement (Doc. 126) at ¶ 4.[20]   Similarly, in his signed Statement of Facts entered at the time of his knowing and voluntary guilty plea, petitioner acknowledged that "[t]he total actual loss to lenders caused by the defendant and his [co-]conspirators in the mortgage fraud conspiracy is greater than $2,500,000 but less than $7,000,000." Statements of Facts (Doc. 127) at ¶ 12. This agreed-upon loss range was thereafter set forth in the PSIR, and adopted by the Court at sentencing. And petitioner, by counsel, specifically represented in the course of the sentencing hearing that he did "not object to the guideline calculation of the loss amount," as that amount was "part of the plea" and was "an accurate calculation." 3/12/2010 Sent. Tr. (Doc. 350), p. 92-93.

Finally, insofar as petitioner contends that his counsel was ineffective throughout the plea

---

[20]   Petitioner also agreed in ¶ 9 of the Plea Agreement to the entry of a Restitution Order for the full amount of the victims' losses, listed in the Plea Agreement as totaling $3,141,409 as of the date of the plea hearing. *Id.* at ¶ 9. And in the course of the subsequent sentencing hearing, petitioner was ordered to pay restitution in the precise amount that had been agreed upon in the Plea Agreement—$3,141,409. *See United States v. Milan*, 1:09cr228-001 (E.D. Va. Mar, 12, 2010) (Judgment in a Criminal Case) (Doc. 200).

and sentencing proceedings with respect to the loss amount to be used for purposes of determining petitioner's guidelines calculations, his claim clearly fails under *Strickland*. A careful review of the record reflects that petitioner's counsel performed in an objectively reasonable manner with respect to the recommended loss amount set forth in the plea agreement and later adopted at sentencing. To be sure, where, as here, a precise loss calculation is not determinable prior to sentencing due to financial complexities of the case or otherwise, counsel, and the sentencing court, must take steps to determine a reasonable estimate of such losses pursuant to § 2B1.1 of the guidelines. The Commentary to § 2B1.1 confirms this fact, making clear that district courts need only "make a reasonable estimate of the loss" when calculating a defendant's guidelines, as "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence." U.S.S.G. § 2B1.1, cmt. n. 3(C). Such a reasonable estimate is precisely what was reached here, both by counsel and by the Court. And petitioner's attempt to modify that reasonable estimate by way of a § 2255 collateral attack, based essentially on events that occurred after the time of sentencing, is wholly inappropriate. Indeed, were a different result to be reached here, nearly every prosecution where a loss amount is estimated at the time of sentencing for purposes of determining a defendant's guidelines calculations would be subject to litigation in a post-sentencing collateral attack. That, of course, is not permissible and does not fall within the scope of the § 2255 statute. Count Five of petitioner's motion must therefore be denied.

## VIII.

For the foregoing reasons, all of petitioner's § 2255 claims—both those related to his sentencing guidelines calculations and those alleging ineffective assistance of counsel—must be denied. An appropriate Order will issue.

Alexandria, VA
October 24, 2014

_____
T. S. Ellis, III
United States District Judge

24